Filed 7/22/24  P. v. Love CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>JOHN W. LOVE,<br><br>   Defendant and Appellant. | B331532<br><br>(Los Angeles County<br>Super. Ct. No. TA026047-02) |

APPEAL from an order of the Superior Court of Los Angeles County, Sean D. Coen, Judge.  Reversed and remanded with directions.

Sally Patrone, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, David E. Madeo and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

John W. Love appeals from an order denying his petition for resentencing under Penal Code former section 1170.95 (now section 1172.6).[1]  In 1994, Love was convicted of second degree murder.  The jury was not instructed on the natural and probable consequences or felony murder doctrines.  Love argues, however, the aiding and abetting jury instruction combined with the second degree implied malice murder instruction permitted the jury to find him guilty of second degree murder under a theory of imputed malice based solely on his participation in the crime.

We conclude the record of conviction does not refute Love's prima facie case for relief as a matter of law.  We reverse and direct the superior court to vacate its order denying the petition, issue an order to show cause, and conduct further proceedings in accordance with section 1172.6, subdivision (d).

**FACTUAL AND PROCEDURAL BACKGROUND**

A.    *The Underlying Crime*[2]

One evening in June 1993, Earl "Little Bleep" Dodson approached Gabriel Cuevas on the street and tried to rob him at

---

[1]    Statutory references are to the Penal Code.

[2]    We describe facts from our previous appellate opinion (*People v. Love* (Feb. 19, 1997, B089161) [nonpub. opn.]) only to provide context for our analysis of whether the jury instructions foreclose the existence of a prima facie case.  (See *People v. Flores* (2022) 76 Cal.App.5th 974, 988 [courts may not consider factual summary in appellate opinion to determine eligibility at prima facie stage]; cf. § 1172.6, subd. (d)(3) [facts set forth in appellate opinions may not be considered during the evidentiary hearing occurring after a prima facie case has been found].)

gunpoint. Cuevas shot Dodson and then went home and called the police. Dodson died later that night.

The next evening, two young men knocked on the door of the front house on 105th Street in Los Angeles, where Patricia and Raul Reyes lived. Cuevas had lived in a trailer behind the Reyes's home. One of the men said something to Ms. Reyes in English as she stood at her closed screen door, and she told them that she did not speak English. The men walked to the front gate, and one of them started shooting at the front door. Mr. Reyes walked up to the door as the shooting started and was fatally shot in the head.

B.     *A Jury Convicts Love of Second Degree Murder*

The People charged Love and his codefendant Antione Pope[3] with the willful murder with malice aforethought of Raul Reyes. (§ 187, subd. (a), count 1.) The People alleged Pope personally used a firearm in the murder. (§ 12022.5, subd. (a).) The People alleged Love was a principal and was armed with a firearm. (§ 12022, subd. (a)(1).) The information alleged, under section 667, subdivision (a)(1), that Love had a prior serious felony conviction for first degree residential burglary. Love pleaded not guilty and denied the allegations.

At trial, the prosecution proceeded on the theory that Pope was guilty of murder with malice aforethought as the direct

---

[3]     Although we spelled Pope's first name Ant**oi**ne in our prior opinion in Love's direct appeal (*People v. Love, supra,* B089161), the information spelled it Ant**io**ne, so we adopt that spelling here.

perpetrator, and that Love was guilty of murder as an aider and abettor who intended to facilitate the murder.

In July 1994, a jury found both defendants guilty. The jury convicted Love of second degree murder (§ 187, subd. (a); count 1) and found true the allegation that he was a principal armed with a firearm (§ 12022, subd. (a)(1)). The jury also found Pope guilty of second degree murder, and found true the allegation that he personally used a firearm in the murder (§ 12022.5, subd. (a)).

Love had waived his right to a jury trial as to the enhancement for the prior serious felony conviction (§ 667, subd. (a)(1)). At a bench trial, the court found the enhancement to be true.

Love was sentenced to 15 years to life on the murder count, plus five years for the firearm enhancement (§ 12022.5, subd. (a)(1)), and five years for the prior serious felony conviction enhancement (§ 667, subd. (a)(1)). In 1997, this court affirmed the judgment. (*People v. Love*, *supra*, B089161.)

C. *The Superior Court Denies Love's Petition under Section 1172.6*

In April 2022, Love, representing himself, filed a petition for resentencing under former section 1170.95. Checking boxes on a form petition, Love requested counsel and alleged that (1) the People filed an information that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine, or other theory under which malice is imputed to a person based solely on that person's participation in the crime; (2) he was convicted of murder following a trial; and (3) he could not now be convicted of murder because of changes to sections 188 and 189.

4

The superior court appointed counsel and ordered briefing. In their response, the People argued Love was not entitled to relief because the jury was not instructed on felony murder, the natural and probable consequences doctrine, or any other theory of liability that imputed malice to Love. Love, then represented by counsel, filed a reply.

In June 2023, the trial court held a hearing on whether Love had established a prima facie case for relief. Love was not present at the hearing, but his counsel was, who noted Love was not present because he was in state prison. Neither the People nor Love's counsel made any argument beyond what was in the briefs.

The trial court found Love was ineligible for relief as a matter of law. Love timely appealed.

## DISCUSSION

### A.    *Senate Bill No. 1437 and Section 1172.6*

Effective 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Reyes* (2023) 14 Cal.5th 981, 984) and significantly narrowed the scope of the felony-murder rule (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Curiel* (2023) 15 Cal.5th 433, 448-449; *People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*)). Section 188, subdivision (a)(3), now prohibits imputing malice based solely on one's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule in section 189, subdivision (e). Section 189 requires the People to prove that the

defendant was the actual killer (§ 189, subd. (e)(1)); an aider and abettor to murder who had the intent to kill (§ 189, subd. (e)(2)); or a major participant in an underlying felony listed in section 189, subdivision (a), who acted with reckless indifference to human life as described in section 190.2, subdivision (d). (§ 189, subd. (e)(3); see *Curiel*, at p. 448; *People v. Wilson* (2023) 14 Cal.5th 839, 868-869; *Strong*, at p. 708.)

With these changes, the Legislature also provided in section 1172.6 a procedure for "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter" to petition the superior court to vacate the conviction and be resentenced on any remaining counts if they could not now be convicted of murder, attempted murder, or manslaughter because of the changes to sections 188 and 189. (§ 1172.6, subd. (a); see Sen. Bill No. 775 (2021-2022 Reg. Sess.) [extending Senate Bill No. 1437's ameliorative changes and procedure for potential relief to individuals convicted of attempted murder, manslaughter, or murder under a theory in which malice is imputed].)

If a section 1172.6 petition contains all the required information, the sentencing court must appoint counsel to represent the petitioner, if requested. (§ 1172.6, subd. (b)(1)(A), (b)(3); see also *Lewis*, *supra*, 11 Cal.5th at pp. 962-963.) The prosecutor must file a response to the petition and the court must hold a hearing to determine whether the petitioner has made a prima facie showing that the petitioner is entitled to relief. (§ 1172.6, subd. (c).) If the petitioner has made the required

showing, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subds. (c) & (d)(1).)

In deciding whether a petitioner has made a prima facie showing for relief under section 1172.6, "'"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause."'" (*Lewis*, *supra*, 11 Cal.5th at p. 971; see *People v. Curiel*, *supra*, 15 Cal.5th at p. 460.) The court may consider the record of conviction, which will "necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, at p. 971; see *Curiel*, at pp. 463-464.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis*, at p. 972; see *People v. Eynon* (2021) 68 Cal.App.5th 967, 975.)

"Nevertheless, the court may appropriately deny a petition at the prima facie stage if the petitioner is ineligible for relief *as a matter of law*. "'[I]f the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner,'" thereby deeming the petitioner ineligible." (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.) "We review de novo whether the trial court conducted a proper inquiry under section 1172.6, subdivision (c)." (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.)

7

B.  *The Trial Court Erred in Denying the Petition at the Prima Facie Stage*

Love argues the aiding and abetting instruction (CALJIC No. 3.01) combined with the second degree implied malice murder instruction (CALJIC No. 8.31) permitted the jury to find him guilty of second degree murder without finding he personally harbored the mental state of implied malice.  We agree.

1.  *Love made a prima facie case for relief*

Love made a prima facie showing of eligibility for relief under section 1172.6.  He stated in his petition for resentencing that the People filed an information that allowed the prosecution to proceed under a theory in which malice is imputed to a person based solely on that person's participation in the crime, that he was convicted of murder following a trial, and that he could not now be convicted of murder because of changes to sections 188 and 189, effective January 1, 2019.  (See § 1172.6, subd. (a)(1)-(3).)  We accept these allegations as true, unless the record of conviction establishes Love is ineligible for relief as a matter of law.  (*People v. Curiel*, *supra*, 15 Cal.5th at p. 460; *Lewis*, *supra*, 11 Cal.5th at p. 971.)

2.  *The trial court instructed the jury on aiding and abetting and implied malice second degree murder*

The trial court instructed the jury on two theories of second degree murder:  (1) unpremeditated murder with the intent to kill (express malice murder) using CALJIC No. 8.30,

8

and (2) implied malice murder using CALJIC No. 8.31.  Under CALJIC No. 8.30, the court instructed the jury on express malice murder as follows:  "Murder of the second degree is [also] the unlawful killing of a human being with malice aforethought when there is manifested an intention to kill a human being but the evidence is insufficient to establish deliberation and premeditation."

Relevant here, under CALJIC No. 8.31, the court instructed the jury on implied malice murder as follows:  "Murder of the second degree is [also] the unlawful killing of a human being when: [¶] 1. The killing resulted from an intentional act, [¶] 2. The natural consequences of the act are dangerous to human life, and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life. [¶] When the killing is the direct result of such an act, it is not necessary to prove that the defendant intended that his act would result in the death of a human being."

Under CALJIC No. 3.01, the court instructed the jury on aiding and abetting liability, in part, as follows:  "A person aids and abets the commission of a crime when he [¶] (1) with knowledge of the unlawful purpose of the perpetrator and [¶] (2) with the intent or purpose of committing or encouraging or facilitating the commission of the crime, by act or advice aids, promotes, encourages or instigates the commission of the crime. . . . [¶] Mere presence at the scene of a crime which does not itself assist the commission of the crime does not amount to aiding and abetting."

9

3. *The jury instructions were ambiguous and allowed the jury to convict Love of second degree murder without finding Love acted with the mental state of implied malice*

The jury instructions here were ambiguous as to the mental state required to convict Love of implied malice second degree murder. Although CALJIC No. 3.01 required Love intend to aid and abet a "crime," it did not specify that crime was murder. Nor did it instruct the jury that the aider and abettor must personally harbor the mental state of implied malice to be convicted of second degree murder.

Where, as here, the petitioner is only charged with murder, the "crime" could clearly reference "murder." But CALJIC No. 8.31 states that when a killing is a direct result of an intentional act (the "natural consequences" of which are "dangerous to human life" and that was "deliberately performed . . . with conscious disregard for, human life"), "it is not necessary to establish that the [direct perpetrator] intended that his act would result in the death of a human being." Knowingly and intentionally aiding and abetting murder without an intent to kill is an awkward, counterintuitive formulation, and one a reasonable jury would likely struggle to parse correctly. Given that ambiguity, a jury may have replaced the instruction's reference to *the crime* with the *intentional act* of the perpetrator (Pope). Under that interpretation, the instruction reads only that the aider and abettor (Love) must knowingly and intentionally aid and abet the commission of Pope's *intentional act*, without any requirement the accomplice personally harbored malice. The jury instructions, therefore, do not conclusively foreclose the existence of Love's prima facie case.

10

4. *The prosecution's closing argument did not clarify the mental state required to convict Love of second degree murder*

The prosecution's closing argument did not resolve the ambiguity in the jury instructions. In closing, the prosecutor stated, "Mr. Love is just as guilty of this crime as Mr. Pope is. Only one person pulled the trigger, but the law says, so what; an aider and abettor is just as guilty as the person who pulls the trigger. I want you to look at the instructions on aiding and abetting. They are very important. And the first one is what's described as principals. The persons concerned in the commission of a crime who are regarded by law as principals in the crime thus committed and [are] equally guilty thereof include those who directly and actively commit the act constituting the crime. That's Mr. Pope. Those who aid and abet the commission of the crime. That's Mr. Love. Mr. Love actually even rises above the level of aiding and abetting. He may not pull the trigger, but he is just as active in this case as anyone else." The prosecutor concluded, "Mr. Pope is clearly guilty of murder in the first-degree. Mr. Love, the law says that Mr. Love stands in his shoes. If you help somebody commit an offense, you stand in their shoes. You are just as guilty of what they are guilty of if you aid and abet that murder. Mr. Love is guilty, also."

The prosecution's closing, therefore, focused on Love's actions—his participation in the shooting—rather than his intent. When discussing Love's statement that he was present at the victim's house, the prosecution stated, "I don't want you to consider his statement for the truth of that. I just want you to consider it for the truth of the fact he was there. He was there with Mr. Pope and he knew what was going on." It's possible that

11

the jury interpreted this to mean Love knew Pope was going to shoot and kill Reyes. But it's also possible to interpret this to mean Love knew he and Pope were going to Reyes's house with the intent to intimidate or assault him, but did not have the necessary murderous intent.

The ultimate question is whether "'the record . . . "contain[s] facts refuting the allegations made in the [section 1172.6] petition."'" (*Lewis, supra,* 11 Cal.5th at p. 971.) Only "[i]f the petition and record in the case *establish conclusively that the defendant is ineligible for relief*" may the trial court dismiss the petition. (*People v. Strong, supra,* 13 Cal.5th at p. 708, italics added.) Given the ambiguous jury instructions, which were not clarified by the prosecutor's closing argument, we cannot say the record conclusively establishes Love is ineligible for relief.

### 5. *We did not previously reject Love's argument*

The People argue that on direct appeal, this court rejected the same argument that Love makes here—that "the instructions permitted the jury to convict appellant of murder without making the requisite mental state finding for aiding and abetting liability." We disagree. On direct appeal, this court held that "CALJIC No. 8.31 was a correct statement of law and set forth the elements the jury had to find to convict Pope of murder. The aiding and abetting instructions, CALJIC Nos. 3.00 and . . . 3.01, indicated appellant had to have the requisite intent to facilitate or encourage the perpetrator's criminal purpose before the jury could find him guilty as an aider and abettor. . . . The prosecutor argued to the jury implied malice findings applied only to the jury's determination of Pope's guilt for murder and appellant's

12

liability as an aider and abettor revolved around the criteria given [to] the jury in the aiding and abetting instructions. Under these circumstances, there is no likelihood the jury misunderstood CALJIC No. 8.31." (*People v. Love, supra,* B089161.)

In other words, this court stated the jury instructions properly set forth aider and abettor liability, which required the jury to find Love had the intent to facilitate or encourage Pope's criminal purpose. But, as discussed, criminal purpose does not necessarily equate to intent to kill. Particularly given the Supreme Court's guidance that prior opinions may not be conclusive in our review at the prima facie stage, we disagree that this court previously addressed and rejected Love's current argument. (See *Lewis, supra,* 11 Cal.5th at p. 972 ["the probative value of an appellate opinion is case-specific, and 'it is certainly correct that an appellate opinion might not supply all answers'"].)

### 6. *Love could not have raised these arguments on direct appeal*

Love relies heavily on *People v. Powell* (2021) 63 Cal.App.5th 689, *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*), and *People v. Maldonado* (2023) 87 Cal.App.5th 1257 (*Maldonado*). Those cases addressed jury instructions similar to the ones given here. *Powell* addressed instructional error on direct appeal, while *Langi* and *Maldonado* found the petitioners had established prima facie cases for relief under section 1172.6 because of ambiguities in the jury instructions. (*Powell,* at p. 714; *Langi,* at pp. 982-983; *Maldonado,* at p. 1266.) In a footnote, the People argue "[t]he decisions in *Langi* and *Maldonado* were also incorrectly decided because they failed to

13

consider the language of section 1172.6, subdivision (a)(3) requiring that defendants show they can no longer be convicted of murder 'because of changes' made by Senate Bill 1437." In support, the People cite *People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921 (*Berry-Vierwinden*).

In *Berry-Vierwinden*, our colleagues in the Fourth District, Division One, affirmed the denial of a resentencing petition under section 1172.6 at the prima facie stage. The case involved a similar instructional problem to the one presented here. The decision relied on the requirement in section 1172.6, subdivision (a)(3), that the petitioner must "establish that he "'could not presently be convicted of murder or attempted murder *because of changes* to Section 188 or 189 made effective January 1, 2019.""" (*Berry-Vierwinden*, *supra*, 97 Cal.App.5th at p. 933.)

The court concluded the alleged issue in the jury instructions in that case could have been raised on direct appeal under *People v. McCoy* (2001) 25 Cal.4th 1111 (*McCoy*). (*Berry-Vierwinden, supra*, 97 Cal.App.5th at p. 935.) *McCoy* held that ""'when guilt does not depend on the natural and probable consequences doctrine, . . . the aider and abettor must know and share the murderous intent of the actual perpetrator."'" (*Berry-Vierwinden,* at p. 935.) Thus, any error was not *created* by Senate Bill No. 1437. (*Berry-Vierwinden*, at pp. 935-936; see also *People v. Flores* (2023) 96 Cal.App.5th 1164, 1173 ["When Flores was convicted in 2010, a provocative act murder conviction required the defendant personally harbor malice, whether it was the defendant or an accomplice who committed the provocative act that caused the death"]; *People v. Burns* (2023) 95 Cal.App.5th 862, 868 ["The Supreme Court's *McCoy* decision

14

. . . made clear that the direct perpetrator's mental state could *not* be imputed to an aider and abettor, whose mental state had to be independently evaluated"].)  The *Berry-Vierwinden* court disagreed with *Langi* and *Maldonado* to the extent they "can be read to suggest that such an instructional error may be asserted as a basis for section 1172.6 relief—even if the alleged error could have been raised on direct appeal under then-existing law not changed by Senate Bill No. 1437."  (*Berry-Vierwinden*, at p. 936.)

We agree with *Berry-Vierwinden* and its progeny.  A petitioner may not raise a claim on a section 1172.6 petition that could have been raised on direct appeal.  Unlike the petitioner in *Berry-Vierwinden*, however, Love could not have raised his arguments here on direct appeal.  The *Berry-Vierwinden* court emphasized that by the time of the defendant's conviction, the law was "already clear" and "unmistakable" under *McCoy*—the challenged theory was "*already* prohibited."  (*Berry-Vierwinden*, *supra*, 97 Cal.App.5th at pp. 935-936.)

But here, Love was convicted in 1994, and this court issued the opinion affirming his conviction in 1997, several years before *McCoy* made clear that "a direct aider and abettor's 'mental state is her own; she is liable for her mens rea, not the other person's.' (*McCoy*, *supra*, 25 Cal.4th at p. 1118.)"  (*Berry-Vierwinden, supra*, 97 Cal.App.5th at p. 935.)  We are not aware of any cases that extend the holding in *Berry-Vierwinden* to cases in which the petitioner's argument could not have been raised on direct appeal.  The infirmity in this case—the possibility of convicting Love without a finding that he acted with implied malice—arose at least in part "because of changes" made by Senate Bill No. 1437.  (§ 1172.6, subd. (a)(3); see also *People v. Strong, supra*,

15

13 Cal.5th at p. 712 ["[S]ection 1172.6, subdivision (a)(3)'s 'because of' language does not require a showing that a claim to relief under Senate Bill 1437 arises from *no other* cause—only that the 2019 changes supply a basis for the claim and so are *a* cause"].)

Because the record of conviction does not conclusively negate the possibility that the jury found Love guilty of second degree murder without finding that he personally harbored the mental state of implied malice, an evidentiary hearing is required.[4]

---

[4] Love also argues that he had a statutory and constitutional right to be present at the prima facie hearing. Because we find the court erred in denying the petition at the prima facie stage on other grounds, we need not reach this issue.

## DISPOSITION

The order denying Love's petition for resentencing under section 1172.6 is reversed. The matter is remanded, and the superior court is directed to issue an order to show cause and conduct an evidentiary hearing under section 1172.6, subdivision (d).

RAPHAEL, J.*

We concur:

MARTINEZ, P. J.

SEGAL, J.

---

* Judge of the San Bernardino County Superior Court, assigned by the Chief Justice under article VI, section 6 of the California Constitution.